UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MICHAEL ORTIZ, *pro se*,

                        Petitioner,

        -against-

PHILIP D. HEATH, Superintendent of
SING SING Correctional Facility,

                        Respondent.
----------------------------------X

**NOT FOR PRINT OR**
**ELECTRONIC PUBLICATION**

**MEMORANDUM & ORDER**
10-CV-1492 (KAM)

**MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

        *Pro se* petitioner Michael Ortiz ("petitioner") is

incarcerated pursuant to a judgment of conviction for

Manslaughter in the First Degree imposed in Supreme Court, Kings

County.  (See ECF No. 1, Petition ("Pet.").)  Alleging that his

state custody violates his federal and constitutional rights,

petitioner seeks relief by means of a petition for a writ of

habeas corpus brought under 28 U.S.C. § 2254.  Now before the

court is petitioner's motion to withdraw the petition, return to

state court and exhaust his unexhausted claims, and then file a

second habeas petition.  The court construes petitioner's "stay

petition," as discussed below, as a motion to amend the petition

as well as an application to invoke the stay-and-abeyance

procedure.  (See ECF No. 6, Motion for a Stay ("Pet'r Stay

Mem."); 9, Opposition to Petitioner's Motion for a Stay ("Resp.

Stay Opp."); 10, Reply to Respondent's Opposition to

Petitioner's Request for a Stay ("Pet'r Reply Mem.").)  For the

reasons that follow, petitioner's motions to amend and stay the petition are denied, and the petition is denied in its entirety.

**BACKGROUND**

Petitioner's conviction and sentence, and hence, this petition, stem from the January 25, 2004 death of Edward Santos ("Santos") from four stab wounds.  In connection with Santos' death, petitioner was arrested and charged with two counts of Murder in the Second Degree (N.Y. Penal Law § 125.25[1], 125.25[2]) and Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01[2]).  (See ECF No. 4, Affirmation of Howard B. Goodman in Opposition to Petition for a Writ of Habeas Corpus dated 7/7/10 ("Goodman Affirm.") at ¶ 5.)

**I. The Trial**

Petitioner's case was tried to a jury in Supreme Court, Kings County.  (See generally ECF No. 4 Exs. 1-8, Trial Transcript 1-713.)  At trial, the prosecution presented two eyewitnesses who described an attack on Santos on the night of his death.  (See id.)  In addition, the prosecution introduced testimony from investigating law enforcement officers and a medical examiner, and the defense called one witness.  (See id.)

Eyewitness Jose Manual Britto ("Britto"), a livery cab driver, testified that as he was driving his car in Brooklyn shortly before 1:00 a.m. on January 25, 2004, he witnessed the

victim, later identified as Santos, being attacked by a group of
ten to twelve people. (Tr. 540, 557, 559, 566-67.) Although it
was dark, Britto testified that the scene was illuminated by
streetlights and his headlights and that as he passed by, he
observed the victim on the ground and the faces of some of the
attackers, including the face of one man near the victim who
took something in his hand and wrapped it in what appeared to be
a shirt. (Id. at 540-42, 545, 567, 570-73, 572, 581-85.) After
turning his car around and passing back by the scene, Britto
testified that he screamed and honked his horn and the group
dispersed. (See id. at 542.)

Eyewitness Larry Petrano ("Petrano") also testified
that he observed the same incident from his third floor
apartment window until the attackers scattered and the victim
staggered down the street and collapsed. (Id. at 446-48, 451-
52, 454, 456-59.) Petrano also testified that he saw a taxicab
stop at the scene for a matter of seconds before continuing on.
(Id. at 455.)

The testimony at trial showed that nearly seven months
after Santos' death, Britto identified petitioner in a lineup as
one of the individuals that assaulted Santos, and specifically,
the individual whom he had seen wrap an unknown object into what
appeared to be a shirt. (See id. at 544.) At the trial two
years later, however, Britto was unable to identify petitioner

Ortiz.  (See id. at 545).  Petrano viewed the same lineup containing petitioner but did not identify anyone.  (Id. at 368, 408-09, 451-52, 468-71.)

In addition to the eyewitness testimony, the prosecution presented evidence from the investigating New York City Police officers who responded to the scene and discovered Stantos lying bloody and unconscious on the ground.  (See id. at 313-16.)  The officers testified that Santos was immediately taken to the hospital where he died later that night.  (Id. at 314-16, 321.) The responding officers further testified that earlier that evening, they had responded to a radio call of an assault in progress which involved Santos and another man, Danny Lugo ("Lugo").  (Id. at 281-84, 287-88, 294-97, 300, 311-12, 322-26, 345.)  However, when the officers arrived at the scene, the altercation was over and, after citing Santos and Lugo for minor infractions, Santos was escorted outside the building. (Id.)

The prosecution also presented testimony from the investigating New York City Police Department detective, Kevin Buell ("Detective Buell"), who testified that in August 2004, nearly seven months after Santos' death, Buell interviewed petitioner in connection with the murder.  (Id. 354-56, 393-94, 399, 426.)  Detective Buell testified that when questioned about Santos' murder, petitioner gave several contradictory accounts.

According to Detective Buell, first petitioner asserted that petitioner was in Florida on the night of Santos' death (id. at 359-60) and later petitioner made a written statement that petitioner was in fact at the scene that night but was observing from across the street and saw someone using a knife, and that petitioner left the area and returned to find Santos on the ground injured (id. at 362). Eventually, after being informed several days later that an eyewitness had identified petitioner in a lineup, petitioner made oral, written, and videotaped statements to the effect that the eyewitness had likely identified petitioner because petitioner, in fact, had been at the scene and had tried to break up the fight involving Santos and another individual named Jason Roman ("Roman"). (Id. at 372-75, 434-38.) In his written and videotaped statements, petitioner further stated that he then left the scene when things were calm only to return later to find Santos injured and officers on the scene. (Id.)

According to Detective Buell, petitioner identified Roman as the individual Santos was arguing with in a photograph of Roman provided by Detective Buell. (Id. at 376.) The prosecution then introduced evidence that Roman was incarcerated in a New York State prison at the time of Santos' death on January 25, 2004. (Id. at 497-98.)

Finally, medical examiner Dr. Carolyn Kappen also testified at trial on behalf of the prosecution. (Id. at 512-24.) Dr. Kappen stated that the autopsy revealed the cause of Santos' death to be four stab wounds to the chest, and that she believed the murder weapon was a "very long, narrow-type object" such as a screwdriver or icepick. (Id. at 512-14, 519-21.)

At the conclusion of the prosecution case, the defense called a single witness, Stephanie Perez ("Perez"), the girlfriend of the deceased. (Id. at 596-618.) Perez testified that the evening of Santos' murder, Santos had come to see Perez where she was staying at a friend's apartment. (Id. at 599.) Because Perez had been arguing with Santos, however, she did not want to see Santos and she asked Lugo, who was also staying at the apartment, to tell Santos that Perez was not there. (Id. at 598-602.) This led to verbal fighting between Santos and Lugo through the apartment door. (Id. at 602.) Perez testified that she then saw Lugo take an unknown number of kitchen knives from the kitchen and try to open up the apartment's fire escape window, and that Lugo told Perez that "he was going to stab that mother f***er," referring to Santos. (Id. at 602-03.) According to Perez, Lugo then left the apartment with the knives, and she heard the two fighting and wrestling in the hallway through the apartment door. (Id. at 614-15.) Perez further testified that Lugo returned to the apartment with the

knives a short time later, after the police were called to the scene of the fight and issued Lugo and Santos tickets for minor infractions. (Id. at 603-05.)

## II.  Conviction and Sentence

At the conclusion of the trial, the court submitted for the jury's consideration charges of Murder in the Second Degree and Manslaughter in the First Degree, and the jury convicted petitioner of Manslaughter in the First Degree (N.Y. Penal Law § 125.20[1]). (Id. at 677-80, 708-10; see also Goodman Affirm. at ¶ 6.) Petitioner was sentenced on June 13, 2006 to fifteen years' imprisonment and five years post-release supervision and is currently incarcerated pursuant to this sentence. (Goodman Affirm. at ¶¶ 6-7, 11.)

## III. Post-Trial Appeals in State Court

Petitioner was appointed new counsel for his direct appeal to the Appellate Division, Second Department, and appealed his conviction to that court on grounds that: (1) his conviction was against the weight of the evidence as the State had failed to prove his guilt beyond a reasonable doubt, and (2) the sentence imposed was excessive. (Pet. at ¶¶ 9, 16; Goodman Affirm. at ¶ 8.) The Second Department affirmed petitioner's conviction on April 28, 2009, and petitioner's subsequent application for leave to appeal to the New York Court of Appeals was denied on August 12, 2009. See People v. Ortiz, 61 A.D.3d

1003, 880 N.Y.S.2d 77 (N.Y. App. Div. 2d Dep't 2009); <u>People v.</u>
<u>Ortiz</u>, 13 N.Y.3d 748, 886 N.Y.S.2d 102 (2009).

Ninety days later, in November 2009, when petitioner's
time for filing a petition for a writ of certiorari expired,
petitioner's conviction became final – and the one year statute
of limitations for filing a habeas petition thus began to run.
<u>See</u> 28 U.S.C. § 2244(d)(1) (applying a one-year period of
limitation to habeas petitions running from "the date on which
the judgment became final by the conclusion of direct review or
the expiration of the time for seeking such review"); <u>see also</u>
<u>Williams v. Artuz</u>, 237 F.3d 147, 151 (2d Cir. 2001) (concluding
that "direct review" as used in Section 2244(d)(1)(A) "includes
direct review by the United States Supreme Court via writ of
certiorari, and that the limitations period for state prisoners
therefore begins to run only after the denial of certiorari or
the expiration of time for seeking certiorari").  The one-year
habeas statute of limitations in this case therefore ran from
November 12, 2009 until November 11, 2010.

## IV.  The Instant Petition

On March 31, 2010, petitioner timely filed the instant
petition for habeas corpus.  (<u>See generally</u> Pet.)  In his
petition, petitioner sought relief on the same two grounds
raised on direct appeal in state court:  (1) that the conviction
was against the weight of the evidence in violation of

petitioner's Fourteenth Amendment rights, and (2) that
petitioner's sentence was excessive in violation of petitioner's
Eighth Amendment rights. (See id.) In response to this court's
order to show cause (see ECF No. 2, Order dated 4/7/10),
Respondent Philip D. Heath ("respondent") filed his responsive
pleading to the petition on July 7, 2010 (see ECF No. 4,
Response to Order to Show Cause ("Resp. Pet. Opp.")).

On July 17, 2010, still within the one-year statute of
limitations period for his habeas claims, petitioner filed a
letter motion seeking a stay of the petition in order to allow
petitioner to return to State court and exhaust certain
additional claims.[1] (See Pet'r Stay Mem.) Respondent opposed
petitioner's motion for a stay, arguing that petitioner had
failed to show good cause why his claims were not previously
exhausted in state court, and failed adequately to articulate
his claims and show that such claims were "not meritless." (See
Resp. Opp. Mem.)

Petitioner then filed a reply and attached a copy of a
motion to vacate his sentence which he indicated was ready for
filing in state court pursuant to New York Criminal Procedure
Law Section 440.10 ("proposed 440 Motion"). (See Pet'r Reply
Mem.; see also ECF No. 10-2, Pet'r 440 Mot.) In his proposed

---

[1]     Specifically, petitioner asserted that "some" of the unexhausted claims
petitioner wished to pursue in state court included: (1) the prosecutor's
use of false testimony; (2) actual innocence; (3) improper summation; and (4)
ineffective assistance of trial counsel. (See Pet'r Stay Mem. at 1-2.)

440 Motion, petitioner seeks to raise before the state court additional, previously unexhausted claims of: (1) ineffective assistance of trial counsel based upon counsel's alleged failure to (i) investigate the crime, (ii) prepare and effectively cross-examine a defense witness, (iii) timely object to the trial court's failure to swear the court interpreter, and (iv) timely object to various forms of prosecutorial misconduct including the prosecutor's inflammatory and prejudicial opening and summation arguments and the prosecutor's use of false testimony; and (2) actual innocence. (See id.) Further, petitioner alleges cause for his failure to previously exhaust these additional claims in state court on the basis of his "being unschooled in legal intricacies" and his "complete reliance on his assigned court's counsel." (Id.)

## DISCUSSION

Although his original petition contains only exhausted claims, petitioner moves to stay his petition in order to return to state court and exhaust the additional, unexhausted claims. (See Pet'r Stay Mem.) Mindful that a *pro se* litigant's filings must be construed "liberally" and "interpret[ed] [so as] to raise the strongest arguments that they suggest," Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation omitted), this court construes petitioner's July 17, 2010 and subsequent submission as a motion to amend his petition to add

the previously unexhausted claims.  Because such amendment would
then result in a so-called "mixed petition" of both exhausted
and unexhausted claims, the court further construes the filings
as a motion to stay this proceeding on that mixed petition until
petitioner completes his exhaustion of his additional claims in
the New York courts.  These separate motions are discussed in
turn.

**I. Motion to Amend**

   **A. Legal Standard**

      A motion to amend a habeas petition is governed by
Federal Rule of Civil Procedure 15 ("Rule 15").  <u>Littlejohn v.
Artuz</u>, 271 F.3d 360, 363 (2d Cir. 2001) (citing Fed. R. Civ. P.
15(a)); 28 U.S.C. § 2242 (habeas corpus petition "may be amended
or supplemented as provided in the rules of procedure applicable
to civil actions").  Under Rule 15, a party may amend once as of
right within certain time frames, or upon consent of the
opposing party or leave of the court.  <u>See</u> Fed. R. Civ. P.
15(a).  Courts must "freely give" leave to amend where justice
requires.  Fed. R. Civ. P. 15(a)(2).  This is especially true in
the context of a *pro se* filing, such as the one here, which the
Second Circuit has emphasized "is to be read liberally" and
should not be dismissed without being granted "leave to amend at
least once when a liberal reading of the [filing] gives any

indication that a valid claim might be stated." Cuoco v.

Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

Leave to amend may be appropriately denied where
amendment would be futile. See Foman v. Davis, 371 U.S. 178,
182 (1962). Futility of a proposed amendment is established
where "the proposed claim could not withstand a motion to
dismiss" for failure to state a claim upon which relief may be
granted. Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258
(2d Cir. 2002). Yet district courts "nonetheless retain the
discretion" to deny leave to amend when necessary "to thwart
tactics that are dilatory, unfairly prejudicial or otherwise
abusive." See Littlejohn, 271 F.3d at 363 (citing Davis, 371
U.S. at 182).

**B. Application**

Here, the relevant timeframes having passed, and
absent the consent of respondent, petitioner may only amend the
petition with leave of the court. See Fed. R. Civ. P. 15. In
considering the propriety of an amendment, the court notes
first, that the record here is devoid of evidence of undue
delay, bad faith, or dilatory motive on the part of petitioner.
See Littlejohn, 271 F.3d at 363. Indeed, petitioner filed his
first motion to stay the petition in July 2010, well before the
one-year statute of limitations period for timely filing a
habeas claim expired in November 2010. The dispositive issue on

whether leave to amend should be granted is thus whether amendment would be futile. The court has considered petitioner's proposed additional claims of ineffective assistance of counsel and his free-standing claim of actual innocence in turn, and for the reasons that follow, the court finds that amendment would be futile.

### 1. Procedural Default of Petitioner's On-the-Record Ineffective Assistance of Trial Counsel Claims

Petitioner's proposed ineffective assistance of trial counsel claim contains several claims which are now procedurally barred because petitioner failed to raise the claims on direct appeal in state court, despite a sufficient record to do so.

### i. Legal Standard

Generally, a state prisoner seeking federal habeas review must first exhaust available state court remedies. See 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). This exhaustion requirement for federal habeas review is premised upon "interests of comity and federalism [which] dictate that state courts must have the first opportunity to decide a petitioner's claims." See Rhines v. Weber, 544 U.S. 269, 273 (2005).

In order to satisfy the exhaustion requirement, a habeas petitioner must give the state courts a fair opportunity to review the federal claim and correct any alleged error. Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982)(en banc). Thus, the exhaustion requirement is satisfied if a petitioner has "fairly presented" his claim in each appropriate state court and "informed the state court of both the factual and the legal premises of the claim he asserts in federal court." Jones v. Keane, 329 F.3d 290, 295 (2d Cir. 2003) (internal citation omitted).

Further, because the exhaustion requirement "refers only to remedies still available at the time of the federal petition, it is [also deemed] satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law." Coleman v. Netherland, 518 U.S. 152, 161 (1996) (internal citations and quotations omitted); see also Perez v. Greiner, 296 F.3d 123, 124 n.2 (2d Cir. 2002)("A petition is unexhausted only if the petitioner can still receive the relief he seeks from the state system." Thus, where petitioner "no longer had the option of proceeding in state court," "it was clearly proper to deem his claims exhausted for purposes of federal habeas review.").

Where a procedural bar gives rise to exhaustion, however, it also "provides an independent and adequate state-law

ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." Netherland, 518 U.S. at 162; see also Jimenez v. Walker, 458 F.3d 130, 145 (2d Cir. 2006) (federal "habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment" and two exceptions not shown). "For a procedurally defaulted claim to escape this fate, the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice, (i.e., the petitioner is actually innocent)." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman v. Thompson, 501 U.S. 722, 748-50 (1991)).

### ii. Application

#### a. Procedural Bars Under New York Law for On-the-Record Claims Not Raised on Direct Appeal

Under New York law, a defendant is "entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals." Aparicio, 269 F.3d at 91 (citing N.Y. Crim. Proc. Law § 450.10(1); N.Y. Court R. § 500.10(a)). In addition to direct appeal, New York also permits defendants to collaterally attack their convictions through a motion to vacate judgment under New York Criminal Procedure Law Section 440.10 ("440 Motion"). See N.Y. Crim. Proc. Law § 440.10.

Such collateral relief is unavailable, however, where a defendant "unjustifiably failed to raise the issue on direct appeal." See Aparicio, 269 F.3d at 91 (citing N.Y. Crim. Proc. Law § 440.10(2)(c)[2]); see also Jones, 329 F.3d at 296 ("failure to have raised the claim on direct review now forecloses further collateral review in state court") (citing N.Y. Crim. Proc. Law § 440.10(2)(c)). Thus, "New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record" to do so. Sweet v. Bennett, 353 F.3d 135, 139 (2d Cir. 2003). Where a New York court denies a collateral attack on a conviction pursuant to Section 440.10(2)(c), the Second Circuit has expressly found that the denial constitutes an independent and adequate state law procedural bar for federal habeas review. See Murden v. Artuz, 497 F.3d 178, 196 (2d Cir. 2007) ("Where the basis for a claim of ineffective assistance of counsel is well established in the trial record, a state court's reliance

---

[2]    New York Criminal Procedure Law Section 440.10(2)(c) provides, in relevant part, that a

> court must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

16

on [440.10] subsection 2(c) provides an independent and adequate procedural bar to federal habeas review.").

Under this standard, New York courts routinely deny 440 motions on ineffective assistance of counsel claims where the claim is grounded in the trial record but the defendant failed to raise the claim on direct appeal.  See, e.g., Washington v. Ercole, No. 08-cv-4835, 2009 U.S. Dist. LEXIS 50120, at *5 (E.D.N.Y. Jun. 15, 2009) (collecting cases).  New York courts also recognize, however, "that some ineffective assistance claims 'are not demonstrable on the main record' and are more appropriate for collateral or post-conviction attack, which can develop the necessary evidentiary record."  Sweet, 353 F.3d at 139 (internal citation omitted).

### b. Petitioner's Procedural Bar Under New York Law and Procedural Default of Federal Habeas Review

Here, petitioner has already pursued and completed the process of direct appeal under New York law, but failed to raise any ineffective assistance of trial counsel claims on his direct appeal.  See People v. Ortiz, 61 A.D.3d 1003, 880 N.Y.S.2d 77 (N.Y. App. Div. 2d Dep't 2009); People v. Ortiz, 13 N.Y.3d 748, 886 N.Y.S.2d 102 (2009).  Petitioner now seeks to raise previously unexhausted habeas claims premised upon trial counsel's on-the-record alleged failures to provide effective assistance.  (See generally Pet'r Reply Mem.)  Specifically,

petitioner claims on-the-record that trial counsel was
ineffective for failing to: (1) effectively cross-examine a
defense witness, (2) timely object to the court's failure to
swear the court interpreter, and (3) timely object to various
forms of prosecutorial misconduct including the prosecutor's
inflammatory and prejudicial opening and summation arguments and
the prosecutor's use of false testimony.  (See id.)

        Because each of these claims is based upon trial
counsel's on-the-record conduct, however, and because petitioner
has shown no need for an evidentiary hearing to develop the
record with respect to these claims, each claim could have been
raised on direct appeal, which petitioner failed to do.  See
Sweet, 353 F.3d at 140 (finding "alleged error that is the basis
for [petitioner's] ineffectiveness claim [regarding charges] was
particularly well-established in the trial record" and noting no
apparent reason "that appellate counsel would have needed a new
evidentiary hearing to develop this claim").  Accordingly,
petitioner can no longer obtain review of these ineffective
assistance claims from the New York Court of Appeals.  See N.Y.
Crim. Proc. L. § 440.10(2)(c); see also Sweet, 353 F.3d at 139-
40 (finding ineffective assistance claim procedurally barred and
"procedurally defaulted for purposes of federal habeas review as
well" where petitioner "unjustifiably failed to argue" the claim

"on direct appeal despite a sufficient record, and consequently waived the claim under § 440.10(2)(c)").

Accordingly, because petitioner's on-the-record ineffective assistance of counsel claim would now be denied by New York courts pursuant to Section 440.10(2)(c), and because such a denial would constitute an independent and adequate state procedural bar, petitioner's on-the-record ineffective assistance claims are deemed exhausted but procedurally defaulted from federal habeas review unless petitioner can meet one of two available exceptions.  See Sweet, 353 F.3d at 139-40.

### c. Whether to Excuse Petitioner's Procedural Default

"As a general rule, claims forfeited under state law may support federal habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error."  House v. Bell, 547 U.S. 518, 536 (2006). Alternatively, petitioner may overcome the procedural bar by showing that "failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750 (internal quotation omitted).  The fundamental miscarriage of justice exception requires a showing of actual innocence based upon "new evidence" that would make it "more likely than not that no reasonable juror would have found the petitioner guilty

beyond a reasonable doubt." <u>House</u>, 547 U.S. at 537. Petitioner
fails to make either showing to excuse his default.

First, the court liberally construes petitioner's
motion for a stay to assert "cause" for the procedural default
on the basis of ineffective assistance of appellate counsel.
(<u>See</u> Pet'r Reply Mem. at ¶ 7 (noting petitioner's "complete
reliance on his assigned court's counsel").) To the extent
petitioner's motion can be construed to assert such 'cause,' any
claim of ineffective assistance of appellate counsel is
unexhausted, but not procedurally defaulted because it could
still be raised in state court in an application for a writ of
error *coram nobis*. <u>See</u> <u>Disimone v. Phillips</u>, 461 F.3d 181, 191
(challenge to appellate counsel effectiveness in New York can be
accomplished through petitioning for a writ of error *coram*
*nobis*) (<u>citing</u> <u>Sweet</u>, 353 F.3d at 141 n.7 <u>and</u> <u>People v. Bachert</u>,
69 N.Y.2d 593, 598-99 (N.Y. 1987)).

However, "ineffective assistance of appellate counsel
claims cannot constitute 'cause' for procedural default unless
first presented in state court as an independent constitutional
claim." <u>Disimone</u>, 461 F.3d at 191 (<u>citing</u> <u>Edwards v. Carpenter</u>,
529 U.S. 446, 451-52 (2000) and <u>Sweet</u>, 353 F.3d at 141 n.7).
Moreover, the court notes that here, petitioner was counseled by
a different attorney on appeal and, further, that in the habeas
context, "[s]trategic choices [by appellate counsel], such as

deciding which issues to raise on appeal, made after thorough investigation of the law and facts[,] . . . are virtually unchallengeable." Brunson v. Tracy, 378 F. Supp. 2d 100, 112 (E.D.N.Y. 2005) (internal quotation omitted); see also Strickland v. Washington, 466 U.S. 668, 689 (noting "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Petitioner therefore fails to make a showing of cause and prejudice for his default. Cf. House, 547 U.S. at 536 (petitioner may overcome state court default by showing "cause for the default and prejudice from the asserted error").

Second, petitioner "makes a free standing claim of innocence" on the basis of the ineffective assistance of counsel claims he also raises and further asserts that he "was convicted of a crime he did not commit." (Pet'r Reply Mem. at 14.) These bare assertions plainly fail to introduce any required "new evidence" and are therefore insufficient to meet the "actual innocence" standard. See House, 547 U.S. at 537; see also Murden, 497 F.3d at 194 ("Actual innocence requires not legal innocence but factual innocence.") (internal quotation omitted). Petitioner therefore further fails to show "actual innocence" to excuse the default. Cf. Aparicio, 269 F.3d at 91 (absent a showing of "cause for the default plus prejudice," a "procedural

default can only be cured by a showing of . . . actual innocence").

In sum, because no state remedies remain available to petitioner, his unexhausted claims of ineffective assistance of counsel based upon counsel's on-the-record conduct are deemed exhausted and procedurally defaulted from federal review. Further, petitioner cannot overcome this procedural bar because he fails to demonstrate the required cause and prejudice or miscarriage of justice. See Aparicio, 269 F.3d at 91 ("procedural default can only be cured by a showing of cause for the default plus prejudice, or a showing of actual innocence"). Amendment of the petition to add these claims would therefore be futile.

### 2. Petitioner's Remaining Ineffective Assistance of Trial Counsel Claims

In addition to the on-the-record ineffective assistance of counsel claims discussed above, petitioner also seeks to amend the petition to add previously unexhausted claims that are not in the record, of ineffective assistance of trial counsel based upon counsel's alleged failure to: (1) investigate the crime by interviewing the emergency medical technicians who treated the victim Santos or eyewitness Petrano, (2) prepare defense witness Perez; and (3) to object to the prosecutor's use of false testimony. Each of these claims involves counsel's

off-the-record conduct, and therefore each constitutes an appropriate basis for a collateral attack under New York law. Indeed, as noted above, "New York courts have held that some ineffective assistance claims 'are not demonstrable on the main record' and are more appropriate for collateral or post-conviction attack, which can develop the necessary evidentiary record." Sweet, 353 F.3d at 139 (internal quotation omitted); see also People v. Brown, 45 N.Y.2d 852, 854 (N.Y. 1978) (in some cases it would be "essential[] that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under CPL 440.10").

Further, because collateral review of a criminal judgment pursuant to New York Criminal Procedure Law Section 440.10 ("Section 440.10") is available "[a]t any time after the entry of judgment," though unexhausted, petitioner's ineffective assistance claims premised upon off-the-record conduct are not procedurally barred. See Caballero v. Keane, 42 F.3d 738, 740-41 (2d Cir. 1994) (petitioner's failure "to avail himself of an important New York procedure for airing his ineffective assistance of counsel claim – a post-trial motion to vacate judgment" – left available "an unexhausted state procedure for considering" petitioner's ineffective assistance of counsel claim") (citing N.Y. C.P.L. § 440.10). Yet, now allowing

petitioner to amend the petition to add these claims and then return to state court in order to exhaust these claims would be futile because each of petitioner's remaining, off-the-record ineffective assistance of counsel claims appear to be plainly meritless.

### i.  Legal Standard

In order to establish a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must meet the familiar two-prong test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  See Williams v. Taylor, 529 U.S. 362, 390-91 (2000).  Specifically, a defendant must show that both (1) counsel's performance "fell below an objective standard of reasonableness" (the "performance prong"); and (2) that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (the "prejudice prong").  Strickland, 466 U.S. at 686-95.

Under the performance prong of this standard, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also United States v. Helgesen, 669 F.2d 69, 72 (2d Cir.), cert. denied, 456 U.S. 929 (1982) ("Trial advocacy is an art, and the advocate must be given some latitude in deciding upon an appropriate trial strategy.").  Further, under the

prejudice prong, "[t]he benchmark . . . must be whether
counsel's conduct so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having
produced a just result," Strickland, 466 U.S. at 686, such that
"there is a reasonable probability that, absent the errors, the
factfinder would have had a reasonable doubt respecting guilt"
Henry v. Poole, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting
Strickland, 466 U.S. at 695).  Thus, even objectively
unreasonable errors on the part of counsel will not result in
the setting aside of a judgment in a criminal proceeding if the
errors can be shown to have had no effect on the judgment.
Strickland, 466 U.S. at 691.

### ii.  Application

Because petitioner cannot meet the two Strickland
prongs on any of his additional proposed ineffective assistance
claims, the claims appear meritless.

First, petitioner seeks to raise an ineffective
assistance claim in connection with trial counsel's alleged
failure to investigate the crime by interviewing Petrano, the
individual who observed the scene from his third floor window
and later waited with the victim for medical personnel, or the
emergency medical technicians ("EMTs") who treated the victim
Santos.  (Pet'r 440 Mot. at 13-14.)  Specifically, petitioner
contends that "there was a smokescreen  . . . with respect to

25

Mr. Pastrano [sic] and very possibly the E.M.S. workers" and
faults trial counsel for failing to investigate and elicit
testimony regarding "what happened when Mr. Pastrano [sic] was
helping with the victim and what did the victim told him with
regard to who was responsible for [Santos'] beating and
ultimately, death." (Id.)

While failure to conduct adequate pre-trial
investigation may serve as the basis for a claim of ineffective
assistance of counsel under Strickland, "strategic choices
after less than complete investigation are reasonable precisely
to the extent that reasonable professional judgments support the
limitations on investigation." Strickland, 466 U.S. at 690-91.
Further, to successfully assert an ineffective assistance of
counsel claim on the basis of a failure to investigate, "a
petitioner must do more than make vague, conclusory, or
speculative claims as to what evidence could have been produced
by further investigation." Taylor v. Poole, 07 Civ. 6318 (RJH)
(GWG), 2009 U.S. Dist. LEXIS 76316, at *39-41 (S.D.N.Y. Aug. 27,
2009) (collecting cases). Indeed, "[c]ourts have viewed claims
of ineffective assistance of counsel skeptically when the only
evidence of the import of a missing witness' testimony is from
the petitioner." McCarthy v. United States, No. 02 Civ. 9082
(LAK), 2004 U.S. Dist. LEXIS 705, at *53 (S.D.N.Y. Jan. 23,
2004) (citations omitted). Thus, "where a petitioner claims

that counsel should have investigated potential witnesses, the petitioner must demonstrate that the witnesses would have testified at trial and explain the expected nature of the witnesses' testimony." See Taylor, 2009 U.S. Dist. LEXIS 76316, at *42-43 (collecting cases).

Here, asserting simply that there was a "smokescreen," petitioner has provided no indication of the evidence that he believes might have been uncovered by further investigation from Petrano and the medical professionals. Moreover, Petrano did testify at trial and was subject to cross-examination. (See, e.g. Tr. at 452-73.) During that cross-examination, Petrano testified that Santos did not speak to him (or to another woman named Cathy, whom Petrano identified as Santos' girlfriend,) while they waited for the ambulance to arrive. (Id. at 463-65.) Petrano's testimony negates petitioner's speculation that further investigation by trial counsel would have revealed that Santos shared exculpatory information about his attackers with Petrano while they awaited the ambulance.

Further, petitioner provides no indication as to whether the medical professionals who treated Santos would have appeared at trial and, if so, what potentially exculpatory evidence they could have provided. This showing is insufficient to make out a claim of ineffective assistance based on failure to investigate. See Carneglia v. United States, No. 03-CV-6388

(ADS), 2006 U.S. Dist. LEXIS 2933, at *11 (E.D.N.Y. Jan. 18, 2006) (denying petitioner's ineffective assistance of counsel claim based upon failure to investigate where "petitioner has not provided affidavits from the potential witnesses nor any assurance they would have appeared at trial had counsel interviewed them"). Absent any information about what the medical workers could have provided, there is no reason to believe that counsel did not consider and reject the possibility of interviewing the workers. See, e.g., Curry v. Burge, No. 03 Civ. 0901 (LAK), 2004 U.S. Dist. LEXIS 23095, at *116 (S.D.N.Y. Nov. 17, 2004) (Conclusory claims "give no indication as to what exculpatory evidence a proper investigation would have revealed, or how such evidence would have benefitted [petitioner's] case. There is also no way to know that trial counsel did not consider investigating these claims but simply rejected them as being unpromising."). Petitioner's ineffective assistance of counsel claim based upon counsel's failure to investigate is therefore unsupported.

Second, petitioner faults trial counsel for counsel's alleged failure to prepare and effectively examine defense witness Perez. (See Pet'r 440 Mot. at 6-8.) Specifically, petitioner claims that trial counsel met with Perez for only ten minutes prior to her testimony, and failed to elicit testimony from Perez regarding: (i) Lugo telling Perez that Lugo was going

28

to stab Santos; (ii) that Lugo punched Santos in the face during the altercation between the two; (iii) that people in the hallway where the fight between Lugo and Santos occurred "had to stop Lugo from cutting" Santos; (iv) that after the incident Lugo demanded Santos's phone number and said that he was going to call Santos to "see if this sh** is going to jump off"; and (v) that Lugo gave Perez a quarter the next day to call Santos's house to see what happened but told Perez not to call right away for fear that she might "make it obvious." (Id.)

As discussed above, petitioner's claim regarding the effectiveness of counsel's examination of Perez is an on-the-record claim which is now procedurally barred in state court and procedurally defaulted from federal habeas review. Moreover, several of the points petitioner faults counsel for failing to elicit from Perez were, in fact, elicited both on direct examination by defense counsel and cross-examination by the prosecutor. For example, Perez testified that (i) Lugo told Perez that Lugo was going to stab Santos (Tr. 602-03), and (ii) Lugo punched Santos in the face during the altercation between the two (Id. at 614-15). Moreover, because Perez testified that she was in the apartment with the door closed while Lugo and Santos fought (id.), there is no evidence that Perez had personal knowledge of whether people in the hallway stopped Lugo from stabbing Santos and, as such, that issue was not a proper

subject for examination. Moreover, even assuming – contrary to controlling presumptions – that counsel's failure to elicit testimony from Perez regarding Lugo's involvement in two phone calls to Santos was not based on counsel's strategic choice, there is no basis in the trial record from which to conclude that testimony on these points, had it been elicited, would have altered the jury's determination.

On this record, and in light of the strong presumption of reasonableness which attaches to counsel's strategic decisions, it appears that petitioner could not meet either the performance or prejudice prongs under <u>Strickland</u> and, as such, his ineffective assistance of counsel claim on the basis of trial counsel's failure to effectively prepare and examine defense witness Perez is meritless. <u>See</u> <u>Strickland</u>, 466 U.S. at 689 (noting "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Finally, petitioner faults trial counsel for counsel's alleged failure to object to the prosecutor's use of false testimony by Detective Buell. (<u>See</u> Pet'r 440 Mot. at 9-11.) "It is common ground that to challenge a conviction because of a prosecutor's knowing use of false testimony, a defendant must establish that (1) there was false testimony; (2) the Government knew or should have known that the testimony was false; and (3) there was 'any reasonable likelihood that the false testimony

could have affected the judgment of the jury.'" United States
v. Helmsley, 985 F.2d 1202, 1205-06 (2d Cir. 1993) (quoting
United States v. Agurs, 427 U.S. 97, 103 (1976)); see also Shih
Wei Su v. Filion, 335 F.3d 119, 127 (2d Cir. 2003) (finding in
habeas context that court must apply test "defined by the
Supreme Court in Agurs").

Here, petitioner has failed to make a showing under
any one of these factors.  Thus, petitioner offers no new
evidence or affidavits to suggest that Detective Buell's
testimony was false or that the prosecution knew that the
detective's testimony was false.  Further, petitioner fails to
provide "any reasonable likelihood" to conclude that such
testimony by Detective Buell, even if false, "could have
affected the judgment of the jury."  See Helmsley, 985 F.2d at
1205-06 (internal quotation omitted).  Accordingly, petitioner's
proposed ineffective assistance claim based upon trial counsel's
failure to object to the prosecutor's knowing use of false
testimony is meritless, as the failure to preserve a meritless
claim cannot constitute ineffective assistance.

Accordingly, because each of petitioner's additional,
off-the-record ineffective assistance of counsel claims lack
merit, it would be futile to allow petitioner to amend the
petition to add these claims so that he might stay the petition
and return to state court to exhaust the additional claims.

### 3. Actual Innocence Claim

Finally, petitioner apparently seeks to amend the petition to add and then exhaust an actual innocence claim.  A showing of actual innocence, however, serves merely as a gateway to the airing of a petitioner's defaulted constitutional claims and is not itself cognizable in habeas as a free-standing claim.  See Herrera v. Collins, 506 U.S. 390, 400 (1993) ("[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").  This arises from the fact that a habeas court is, in short, concerned "'not [with] the petitioners' innocence or guilt but solely [with] the question whether their constitutional rights have been preserved.'"  Id. (quoting Moore v. Dempsey, 261 U.S. 86, 87–88 (1923)).

Because, as discussed above, absent any newly discovered evidence, petitioner's bare assertions of actual innocence fail to meet the actual innocence standard as set forth by the Supreme Court.  Moreover, petitioner's claim of actual innocence appears to be unsupported by the record, and because the actual innocence claim itself cannot be a free-standing basis for federal habeas review, the actual innocence claim is plainly meritless and amendment of the petition to add such a claim would be futile.

Accordingly, because each of petitioner's proposed amendments would be futile, the motion to amend the petition is denied in its entirety.

## II.  Motion to Stay

The court need not address the motion to stay the petition because, without amendment, the petition now contains only exhausted claims, and the stay-and-abeyance procedure applies only to petitions which contain unexhausted claims.  As explained below, even assuming that amendment of the petition was not futile and the court granted petitioner's request to amend the petition to include unexhausted claims, petitioner has failed to demonstrate a sufficient basis for invoking a stay.

### A. Legal Standard

In light of the total exhaustion requirement for federal habeas review discussed above, a district court faced with a habeas petition containing unexhausted claims generally has three options.  First, the court may dismiss the unexhausted claims without prejudice.  See Rhines, 544 U.S. at 273, 274. Second, if the unexhausted claim is plainly meritless, the court may deny the claim on the merits notwithstanding the petitioner's failure to exhaust.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.");

see also <u>Rhines</u>, 544 U.S. at 277 ("[T]he district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless"). Third, where an unexhausted claim is contained in a petition along with exhausted claims, a district court may either invite the petitioner to delete the unexhausted claims and proceed with only the exhausted claims, or, in order to avoid foreclosing federal review of the unexhausted claims, under "limited circumstances" the court may "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." <u>Rhines</u>, 544 U.S. at 275, 277-78.

In order to invoke the so-called "stay-and-abeyance" procedure for a mixed habeas petition, a district court must first ensure that certain criteria are met. <u>See</u> <u>id.</u> at 277-78 ("stay and abeyance should be available only in limited circumstances"). Specifically, the court must ensure that: (1) good cause exists for the petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims are not "plainly meritless," and (3) the petitioner has not engaged in intentionally dilatory litigation tactics. <u>See</u> <u>id.</u>

### B. Application

Here, there is no evidence that petitioner has engaged in intentionally dilatory litigation tactics, however,

34

petitioner cannot meet the remaining criteria required to qualify for a stay because he does not show "good cause" for his previous failure to exhaust his claims or that his claims are not "plainly meritless."  See id.

First, petitioner does not show "good cause" for his failure to exhaust these claims in state court.  Petitioner asserts "good cause" based on the fact that he is "unschooled in legal intricacies" and his concomitant "complete reliance on his assigned court's counsel."  (Pet'r Stay Mem. at 2 ¶ 7.)  The Supreme Court has not defined "good cause," and while some courts have found "good cause" to exist where a petitioner received ineffective assistance of appellate counsel, those cases have generally involved situations where the same counsel represented petitioner during trial and on appeal because "it is reasonable to conclude that an appellate attorney will not claim his own ineffective assistance of counsel."  See, e.g., Martinez v. Artus, No. 06-CV-5401 (ERK), 2010 U.S. Dist. LEXIS 40553, at *12 (E.D.N.Y. Apr. 26, 2010).

Here, petitioner was represented by new counsel on appeal, and therefore there is reason to believe that counsel would have raised a potentially meritorious ineffective assistance claim on appeal if one had existed.  As discussed above, however, the proposed ineffective assistance claims petitioner now seeks to raise are meritless.  Given that an

appellate attorney need not bring every potential non-frivolous claim in order to meet the Strickland performance prong, failure to raise a plainly meritless claim, as here, cannot be ineffective assistance of counsel. See Smith v. Robbins, 528 U.S. 259, 288 (2000) (appellate counsel may appropriately "select among" potential non-frivolous claims "to maximize the likelihood of success of appeal") (citing Jones v. Barnes, 463 U.S. 745, 750-54 (1983)); see also Smith v. Murray, 477 U.S. 527, 536 (1986) ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting Barnes, 463 U.S. at 751-752). Accordingly, there does not appear to be a basis for concluding that petitioner's appellate counsel was ineffective for failing to raise the claims addressed above, which the court finds to be meritless, and petitioner therefore fails to show the required "good cause" for his failure to exhaust the claims in state court. See Rhines, 544 U.S. at 277-78.

Moreover, even presuming good cause was established, a court may not grant a stay when the petitioner's claims are "plainly meritless." See id. As discussed at length above, petitioner has failed to show that the unexhausted claims are not "plainly meritless," indeed, it appears that further review

of these claims in state court is either procedurally barred or would be futile.  See id.  It would therefore be an abuse of discretion to stay the petition to allow petitioner to exhaust his additional claims.  See id. at 277.

Accordingly, even if the court granted petitioner's request to amend the petition to add the proposed unexhausted claims, petitioner's request to stay the resulting mixed petition would be denied.  See 28 U.S.C. § 2254(b)(2); see also Rhines, 544 U.S. at 277.

### III. The Instant Petition

Having denied petitioner's requests to amend and stay the petition, remaining before the court is petitioner's original habeas petition which indisputably contains only exhausted claims which were previously adjudicated on the merits in the state courts.

Under the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), a federal court may grant habeas relief with respect to a federal claim adjudicated on the merits in state court only if the adjudication of the claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States,"[3] or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or" if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 413 (2000).  A state court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  The Supreme Court has emphasized that the reasonableness inquiry is an objective rather than subjective one.  Id. at 409-10.  Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be

---

[3]   Federal courts may also consider the decisions of inferior federal courts as "helpful amplifications of Supreme Court precedent," in "evaluating whether the state court's application of the law was reasonable."  Matteo v. Sup't, 171 F.3d 877, 890 (3d Cir. 1999) (en banc); see also Bohan v. Kuhlmann, 234 F. Supp. 2d 231, 248 n.10 (S.D.N.Y. 2002) (a district court is not required to disregard a Circuit court's interpretation of "clearly established Federal law, as determined by the Supreme Court"); Shiwlochan v. Portuondo, 345 F. Supp. 2d 242, 263 (E.D.N.Y. 2004) (same).

unreasonable" in order to warrant federal habeas relief.  <u>Id.</u> at 411.

### A. Claim Based on Legal Insufficiency of the Evidence

Petitioner seeks habeas relief on the grounds that the evidence at trial was legally insufficient to support his conviction for first degree manslaughter on the grounds that the prosecution did not prove beyond a reasonable doubt that petitioner participated in the attack on Santos.  (Pet. at 6.) There is no dispute that petitioner exhausted this claim and that the state courts denied the claim on the merits.  Because petitioner cannot show that the state courts unreasonably applied the governing legal standards in adjudicating this claim, however, the claim must be denied.

Petitioner further seeks to argue that his conviction was against the weight of the evidence (<u>id.</u>), but because this claim is not a proper basis for federal habeas review, it is denied.

### 1. Legal Standard

Under the deferential AEDPA standard of review discussed above, where a state court has adjudicated a claim of legal insufficiency on the merits, the sole inquiry on federal habeas review is whether the state court unreasonably applied the governing standard for legal insufficiency claims set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979).  <u>See</u> <u>Policano</u>

v. Herbert, 507 F.3d 111, 115-116 (2d Cir. 2007) ("[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.") (citing Jackson, 443 U.S. at 324). Under that standard, a reviewing court must consider the evidence in the light "most favorable to the prosecution" Einaugler v. Supreme Court of the State of New York, 109 F.3d 836, 840 (2d Cir. 1997), and the conviction must be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original). "[A] petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000). Further, in considering the sufficiency of the evidence for a state conviction, "[a] federal court must look to state law to determine the elements of the crime." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) (citations omitted).

### 2. Application

Under New York law, a person commits Manslaughter in the First Degree when, "with intent to cause serious physical injury to another person, he causes the death of such person or

40

of a third person[.]"  N.Y. Penal Law § 125.20(1).  Further, New York law provides that a person can be held criminally liable for an offense when, "acting with the mental culpability required for the commission" of the offense, that person *inter alia*, "intentionally aids" another in commission of an offense. N.Y. Penal Law § 20.00.

Here, construing the evidence in the light most favorable to the prosecution, and drawing all reasonable inferences therefrom, a rational jury could have concluded that petitioner was guilty of assaulting Santos with the intent to cause Santos "serious physical injury," and thereby caused Santos' death in violation of New York Penal Law Section 125.20(1).  Specifically, a rational jury could have credited eyewitness Britto's identification of petitioner as an individual who was punching Santos in the head and who was a member of the group assaulting Santos and the individual whom Britto observed wrapping an object in what appeared to be a shirt.  This testimony, coupled with the testimony of the medical examiner that Santos died of multiple stab wounds likely inflicted by a long sharp object, could lead a reasonable juror to conclude beyond a reasonable doubt that petitioner was one of the individuals who, acting in concert with others, attacked Santos, thus causing Santos' death and making petitioner guilty of first-degree manslaughter under New York law.  See People v.

Modesto, 262 A.D.2d 586, 586 (N.Y. App. Div. 2d Dep't 1999)
(finding evidence legally sufficient to support a first-degree
manslaughter conviction where defendant was one of group of gang
members who "perpetrated a vicious fatal assault" on the victim,
despite fact that defendant was not "among the assailants using
knives or ice picks"). Further, a rational juror could have
drawn an inference of guilt from petitioner's inconsistent
stories upon questioning by Detective Buell, as well as his
incorrect implication of Roman as an individual involved in the
crime. Because the record evidence reveals that a rational
juror could have concluded petitioner's guilt beyond a
reasonable doubt under the Jackson standard, there is no basis
to conclude that the New York courts unreasonably applied the
Jackson standard. See Williams, 529 U.S. at 411.

Moreover, to the extent petitioner raises a claim that
the verdict was against the weight of the evidence, the claim
asserts only an error of state law which is not a basis for
federal habeas review. See McKinnon v. Sup't, Great Meadow
Corr. Facility, 355 Fed. Appx. 469, 475 (2d Cir. 2009) ("the
argument that a verdict is against the weight of the evidence
states a claim under state law, which is not cognizable on
habeas corpus, and as a matter of federal constitutional law a
jury's verdict may only be overturned if the evidence is
insufficient to permit any rational juror to find guilt beyond a

reasonable doubt") (citing <u>Jackson</u>, 443 U.S. at 324 <u>and</u>
<u>Policano</u>, 507 F.3d at 116) (additional internal citations
omitted).

Accordingly, petitioner's sufficiency and weight of
the evidence claims are denied.

**B. Excessive Sentence**

Petitioner claims that his sentence is excessive and
further appears to claim that the sentence is vindictive in
retaliation for his rejection of a pre-trial plea offer.  (Pet.
at 7.)  The excessive sentence claim is not a proper basis for
federal habeas review and petitioner's vindictive sentencing
claim is unexhausted, procedurally defaulted, and in any event,
plainly meritless.

**1. Legal Standard**

It is well-settled that no federal constitutional
issue is raised where the term of a challenged sentence falls
within the range prescribed by state law.  <u>See</u> <u>White v. Keane</u>,
969 F.2d 1381, 1383 (2d Cir. 1992) (affirming dismissal of
petition for habeas relief where petitioner challenged as "cruel
and unusual" a sentence within the range prescribed by state
law).  An enhanced sentence that is "motivated by actual
vindictiveness towards the defendant for having exercised his
guaranteed rights" violates due process, however, and thus
serves as the proper basis for federal habeas review.  <u>See</u>

<u>Morales v. Miller</u>, 41 F. Supp. 2d 364, 380 (E.D.N.Y. 1999)

(<u>quoting</u> <u>Wasman v. United States</u>, 468 U.S. 559, 568 (1984)).

### 2. Application

Here, petitioner does not dispute that his fifteen year sentence for first degree manslaughter fell within the range prescribed by New York Penal Law for a Class B violent felony offense.  <u>See</u> N.Y. Penal Law §§ 70.02(1)(a), (2)(a), (3)(a), 125.20 (offense of first degree manslaughter requires determinate prison term of between five and twenty-five years). Because petitioner's sentence fell within the range prescribed by state law, his excessive sentence claim does not raise a federal constitutional issue and, therefore, is not a proper basis for habeas relief.  Accordingly, petitioner's Eighth Amendment claim is denied.  <u>See</u> <u>Keane</u>, 969 F.2d at 1383.

Moreover, to the extent petitioner for the first time attempts to raise a claim of vindictiveness in connection with his sentence, this claim is unexhausted because he failed to raise it on direct appeal, and, for the reasons discussed at length above, this claim is now procedurally barred from review in state court pursuant to New York Criminal Procedure Law Section 440.10.  <u>See</u> N.Y. Crim. Proc. L. § 440.10(2)(c); <u>see also</u> <u>Aparicio</u>, 269 F.3d at 89-90.  This claim is therefore deemed exhausted but procedurally barred from federal habeas review because petitioner does not show cause and prejudice for

the default or that a miscarriage of justice would result from this court's failure to hear the claim. See Aparicio, 269 F.3d at 90.

Moreover, upon the record before the court, petitioner has failed to show good cause for his failure to previously exhaust this claim and it appears plainly meritless. Consequently, there is no basis to stay the petition to allow petitioner to return to state court to exhaust this claim.

Accordingly, to the extent petitioner seeks federal habeas relief on the basis of an unexhausted vindictiveness at sentencing claim, the claim is deemed exhausted but procedurally barred and thus denied on the basis of petitioner's procedural default, or alternatively, denied on the merits pursuant to § 2254(b)(2), notwithstanding the failure of petitioner to exhaust state remedies. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also Rhines, 544 U.S. at 277 ("[T]he district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless").

## CONCLUSION

For the foregoing reasons, the motion to amend the petition, the motion to stay the petition, and the application

for writ of habeas corpus are each denied in their entirety.

Because petitioner has not made a substantial showing of the

denial of any constitutional right, the court will not issue a

certificate of appealability. 28 U.S.C. § 2253; Lozada v.

United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on

other grounds, United States v. Perez, 129 F.3d 255, 259-60 (2d

Cir. 1997) (discussing the standard for issuing a certificate of

appealability). The court certifies, pursuant to 28 U.S.C.

§ 1915(a), that any appeal from this judgment denying the

petition would not be taken in good faith. Coppedge v. United

States, 369 U.S. 438, 444 (1962).

The Clerk of the Court is respectfully requested to

dismiss the petition, enter judgment in favor of respondent, and

to close this case. Respondent shall serve a copy of this

Memorandum and Order upon petitioner and file a declaration of

service by April 8, 2011.

**SO ORDERED.**

Dated:      Brooklyn, New York
            April 6, 2011

_____/s/_____
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York